# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SEAN JEFFREY RICHSON, | Case No. 1:15-cv-00866-EPG-HC |
| Petitioner, | ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS |
| v. | |
| M.D. BITER, | |
| Respondent. | |

Petitioner Sean Jeffrey Richson is a state prisoner proceeding *pro se* with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. In the petition, Petitioner raises the following claims for relief: (1) ineffective assistance of trial counsel, and (2) prosecutorial misconduct.

For the reasons discussed herein, the Court finds that denial of the petition for writ of habeas corpus is warranted.

## I.

## BACKGROUND

On January 25, 2012, Petitioner was convicted by a jury in the Kings County Superior Court of battery by a prisoner upon a noninmate. (CT[1] 89). The jury also found true the allegation that Petitioner had two prior convictions within the meaning of the three strikes law. (CT 90–91). Petitioner was sentenced to an imprisonment term of twenty-five years to life. (CT

---

[1] "CT" refers to the Clerk's Transcript on Appeal lodged by Respondent on December 17, 2015. (ECF No. 18).

214). On January 15, 2014, the California Court of Appeal, Fifth Appellate District affirmed the judgment. People v. Richson, No. F064839, 2014 WL 129834, at *14 (Cal. Ct. App. Jan. 15, 2014). The California Court of Appeal denied a petition for rehearing on February 4, 2014. (LDs[2] 5, 6). The California Supreme Court denied Petitioner's petition for review on March 26, 2014. (LDs 7, 8).

Subsequently, Petitioner filed a petition for writ of habeas corpus in the Kings County Superior Court, which denied the petition on May 8, 2014. (LDs 9, 10). Petitioner then filed a habeas petition in the California Court of Appeal, Fifth Appellate District, which denied the petition on August 14, 2014. (LDs 13, 14). Thereafter, Petitioner filed another state habeas petition in the Kings County Superior Court, which denied the petition on December 12, 2014. (LDs 11, 12). Petitioner then filed another habeas petition in the California Court of Appeal, which denied the petition on February 11, 2015. (LDs 15, 16). Finally, Petitioner filed three state habeas petitions in the California Supreme Court, which denied all three petitions. (LDs 17–22).

On June 8, 2015, Petitioner filed the instant federal petition for writ of habeas corpus. (ECF No. 1). Respondent has filed an answer to the petition, and Petitioner has filed a traverse. (ECF Nos. 15, 17). The parties have consented to the jurisdiction of the United States Magistrate Judge. (ECF Nos. 4, 8).

## II.

### STATEMENT OF FACTS[3]

Correctional Lieutenant Johnny Rivero was working at the Corcoran State Prison Substance Abuse Treatment Facility on October 6, 2010. He had recently transferred to this facility, and had just begun working in Facility C, where defendant was housed. Rivero was responsible for training other officers, providing leadership, and ensuring the officers were following proper protocol. During his shift, Rivero was advised by Correctional Officer Christopher Cribbs that some inmates were failing to follow procedure by refusing to stand during the inmate count. Cribbs intended to file a formal rules violation against the inmates; however, Rivero stated he would handle the matter directly with the inmate by providing "counseling." Rivero explained that in lieu of directly filing a formal rules violation, which can result in discipline for the inmate, the officers are encouraged to counsel the inmate about the violation. If an inmate is receptive to

---

[2] "LD" refers to the documents lodged by Respondent on December 17, 2015. (ECF No. 18).

[3] The Court relies on the California Court of Appeal's January 15, 2014 opinion for this summary of the facts of the crime. See Vasquez v. Kirkland, 572 F.3d 1029, 1031 n.1 (9th Cir. 2009).

the counseling, the incident is documented; however there is no formal violation and no loss of privileges.

Rivero requested defendant be brought to the correctional office so he could speak with him about the matter. After learning defendant did not wish to go to the office, Rivero directed other officers to have defendant, whom he had never met, brought to the office. Both defendant and his cellmate were contacted and escorted to the office. Defendant's cellmate was the first to enter the office and Rivero spoke with him about the issue. Due to the cellmate's agitated state, the interview with him was terminated and he was escorted from the office.

Next, defendant entered the office and sat down in a chair by the wall. The small office was occupied by Rivero, who was seated near defendant, and Correctional Sergeants Matthew Bejarano, David Smith, and Correctional Officer Cribbs. Defendant was unrestrained. Rivero began speaking to defendant about the incident; however, defendant appeared uninterested in the conversation. Defendant was not aggressive or angry; rather, he sat, slouched forward, and stated he would not correct the behavior at issue. Rivero decided the counseling was not being effective and instructed defendant to return to his cell. Defendant remained seated so Rivero stood, placed his hand on defendant's shoulder, and again told him to return to his cell. Defendant remained seated for a few more seconds, then suddenly jumped up and struck Rivero in the temple, knocking him backwards. Defendant continued to advance and strike Rivero, causing Rivero to fall against the wall. Rivero grabbed defendant and both men fell to the ground. Rivero began striking defendant while the other officers in the office came to his aid.

Cribbs, Bejarano, and Smith all worked to restrain defendant and were ultimately able to place him in handcuffs. Defendant was transported to the medical facility within the prison by other personnel. Rivero also went to the hospital to evaluate his injuries. As a result of the altercation, Rivero suffered a black eye, cut lip, sore jaw, and a cut on his knee. Cribbs was also injured and suffered a torn shoulder muscle, a bruised knee, and a jammed thumb.

***Defense Case***

Defendant testified he had been having a problem with Cribbs because he failed to provide him with his meal. Because he was upset over this incident, he protested by refusing to stand during the inmate count. Later, 8–10 officers escorted him to the office "to pressure [him] about this situation." Both he and his cellmate were taken to the office and his cellmate was the first to talk to Rivero. Subsequently, defendant entered the office and spoke with Rivero. He told Rivero he had nothing to say, and that Rivero could have talked to him in his cell. Rivero responded that defendant was the inmate, so he should come to Rivero. After defendant told Rivero he had nothing to say, Rivero appeared angry and clenched his fists. He asked defendant if he thought he was tough, and suddenly grabbed defendant by the back of the neck and slammed his head into the wall. Defendant turned and swung at Rivero, and the two fell to the floor. Although Cribbs, Smith, and Bejarano were in the office, they initially did nothing. Rivero hit defendant on his face and upper body and defendant fought back to defend himself. At some point the other officers in the office separated the two, and defendant was restrained. He did not continue to fight once Rivero stopped attacking him. As a result of the altercation, defendant received a bruise on his neck, and a gash and knot to his forehead.

Defendant had not had any prior dealings with Rivero and had no reason to attack him. Defendant admitted he had previously been convicted of murder and robbery

and was currently a level 4 inmate at the prison. The parties stipulated that if Rivero grabbed defendant and slammed him into a wall, unprovoked, that would constitute an excessive use of force.

Richson, 2014 WL 129834, at *1–2.

## III.

## STANDARD OF REVIEW

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375 (2000). Petitioner asserts that he suffered violations of his rights as guaranteed by the United States Constitution. The challenged conviction arises out of the Kings County Superior Court, which is located within the Eastern District of California. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(d).

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997) (en banc). The instant petition was filed after the enactment of the AEDPA and is therefore governed by its provisions.

Under the AEDPA, relitigation of any claim adjudicated on the merits in state court is barred unless a petitioner can show that the state court's adjudication of his claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); Davis v. Ayala, 135 S. Ct. 2187, 2198 (2015); Harrington v. Richter, 562 U.S. 86, 97–98 (2011); Williams, 529 U.S. at 413. Thus, if a petitioner's claim has been "adjudicated on the merits" in state court, the "AEDPA's highly deferential standards" apply. Ayala, 135 S. Ct. at 2198. However, if the state court did not reach the merits of the claim, the claim is reviewed de novo. Cone v. Bell, 556 U.S. 449, 472 (2009).

4

In ascertaining what is "clearly established Federal law," this Court must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." Williams, 529 U.S. at 412. In addition, the Supreme Court decision must "'squarely address[] the issue in th[e] case' or establish a legal principle that 'clearly extend[s]' to a new context to the extent required by the Supreme Court in . . . recent decisions"; otherwise, there is no clearly established Federal law for purposes of review under AEDPA and the Court must defer to the state court's decision. Moses v. Payne, 555 F.3d 742, 754 (9th Cir. 2008) (alterations in original) (quoting Wright v. Van Patten, 552 U.S. 120, 125, 123 (2008)).

If the Court determines there is clearly established Federal law governing the issue, the Court then must consider whether the state court's decision was "contrary to, or involved an unreasonable application of, [the] clearly established Federal law." 28 U.S.C. § 2254(d)(1). A state court decision is "contrary to" clearly established Supreme Court precedent if it "arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." Williams, 529 U.S. at 413. A state court decision involves "an unreasonable application of[] clearly established Federal law" if "there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme Court's] precedents." Richter, 562 U.S. at 102. That is, a petitioner "must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Id. at 103.

If the Court determines that the state court decision was "contrary to, or involved an unreasonable application of, clearly established Federal law," and the error is not structural, habeas relief is nonetheless unavailable unless it is established that the error "had substantial and injurious effect or influence" on the verdict. Brecht v. Abrahamson, 507 U.S. 619, 637 (1993) (internal quotation mark omitted) (quoting Kotteakos v. United States, 328 U.S. 750, 776 (1946)).

The AEDPA requires considerable deference to the state courts. The Court looks to the last reasoned state court decision as the basis for the state court judgment. See Brumfield v. Cain, 135 S. Ct. 2269, 2276 (2015); Johnson v. Williams, 133 S. Ct. 1088, 1094 n.1 (2013); Ylst v. Nunnemaker, 501 U.S. 797, 806 (1991). "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." Richter, 562 U.S. at 99. Where the state court reaches a decision on the merits but provides no reasoning to support its conclusion, a federal habeas court independently reviews the record to determine whether habeas corpus relief is available under § 2254(d). Walker v. Martel, 709 F.3d 925, 939 (9th Cir. 2013). "Independent review of the record is not *de novo* review of the constitutional issue, but rather, the only method by which we can determine whether a silent state court decision is objectively unreasonable." Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003). The federal court must review the state court record and "must determine what arguments or theories . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." Richter, 562 U.S. at 102.

## IV.

## DISCUSSION

**A. Ineffective Assistance of Counsel**

1. Strickland Legal Standard

The clearly established federal law governing ineffective assistance of counsel claims is Strickland v. Washington, 466 U.S. 668 (1984), which requires a petitioner to show that (1) "counsel's performance was deficient," and (2) "the deficient performance prejudiced the defense." Id. at 687. To establish deficient performance, a petitioner must demonstrate that "counsel's representation fell below an objective standard of reasonableness" and "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id. at 688, 687. Judicial scrutiny of counsel's performance

is highly deferential. A court indulges a "strong presumption" that counsel's conduct falls within the "wide range" of reasonable professional assistance. Id. at 687. To establish prejudice, a petitioner must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. A court "asks whether it is 'reasonable likely' the result would have been different. . . . The likelihood of a different result must be substantial, not just conceivable." Richter, 562 U.S. at 111–12 (citing Strickland, 466 U.S. at 696, 693).

### 2. Failure to Impeach Lieutenant Rivero's Testimony

In his first claim for relief, Petitioner asserts that his trial counsel was ineffective for failing to impeach prosecution witness Lieutenant Johnny Rivero's testimony that he intended to resolve the dispute informally to prevent Petitioner from receiving a rules violation report ("RVR") with evidence that Petitioner had already received an RVR approximately six hours before the incident. (ECF No. 1 at 5).[4] Respondent argues that although there appear to be procedural default issues, the claim should be denied on the merits. (ECF No. 15 at 20).

### a. Procedural Default

A federal court will not review a petitioner's claims if the state court has denied relief on those claims pursuant to a state law procedural ground that is independent of federal law and adequate to support the judgment. Coleman v. Thompson, 501 U.S. 722, 729–30 (1991). This doctrine of procedural default is based on the concerns of comity and federalism. Id. at 730–32. However, there are limitations as to when a federal court should invoke procedural default and refuse to review a claim because a petitioner violated a state's procedural rules. Procedural default can only block a claim in federal court if the state court "clearly and expressly states that its judgment rests on a state procedural bar." Harris v. Reed, 489 U.S. 255, 263 (1989). A petitioner "may obtain federal review of a defaulted claim by showing cause for the default and prejudice from a violation of federal law." Martinez v. Ryan, 566 U.S. 1, 10 (2012) (citing Coleman, 501 U.S. at 750).

---

[4] Page numbers refer to the ECF page numbers stamped at the top of the page.

1    In determining whether a state procedural ruling bars federal review, the Court looks to

2    the "last reasoned opinion on the claim." Ylst, 501 U.S. at 804. This claim was raised in

3    Petitioner's October 23, 2014 state habeas petition filed in the California Supreme Court, which

4    denied the petition with citation to In re Clark, 5 Cal. 4th 750, 767–69 (Cal. 1993). (LDs 17, 18).

5    See Curiel v. Miller, 830 F.3d 864, 870 (9th Cir. 2016) (en banc) ("We have no cause to treat a

6    state court's summary order with citations as anything but a 'reasoned' decision, provided that

7    the state court's references reveal the basis for its decision."). Clark discusses several procedural

8    bars used by California courts, and the pages cited here by the California Supreme Court refer to

9    the bar on successive petitions.

10    As the California Supreme Court clearly and expressly stated that its judgment rests on a

11    state procedural ground, procedural default is appropriate if the successiveness rule is

12    independent and adequate. Petitioner argues that ineffective assistance of counsel caused the

13    default. (ECF No. 17 at 2). Respondent argues that this claim should be denied on the merits

14    because judicial economy counsels giving the merits question priority when the procedural bar

15    presents a complicated issue of law. (ECF No. 15 at 20). Ordinarily procedural bar issues are

16    resolved first, but courts have recognized that "[p]rocedural bar issues are not infrequently more

17    complex than the merits issues . . . so it may well make sense in some instances to proceed to the

18    merits if the result will be the same." Franklin v. Johnson, 290 F.3d 1223, 1232 (9th Cir. 2002)

19    (citing Lambrix v. Singletary, 520 U.S. 518, 525 (1997)). Accordingly, the Court will proceed to

20    address the claim on the merits. "Where, as here, the state Supreme Court has denied post-

21    conviction relief due to procedural default, we review a defendant's habeas claims de novo."

22    Allen v. Benedetti, 629 F. App'x 814, 815 (9th Cir. 2015) (citing Chaker v. Crogan, 428 F.3d

23    1215, 1221 (9th Cir. 2005)), cert. denied sub nom. Allen v. Baca, 137 S. Ct. 1063 (2017).

24        **b.  Analysis**

25    At 1:10 p.m. on October 6, 2010, Petitioner received RVR Log No. C-10-09-023

26    regarding his refusal to stand for the mandatory standing count on September 30, 2010. The

27    RVR was dated October 5, 2010, and the reporting employee was Correctional Officer J. Davis.

28    (ECF No. 15-2 at 2). At trial, Correctional Officer Christopher Cribbs testified that Petitioner

refused to stand for the mandatory standing count at 5:00 p.m. on October 6, 2010. (7 RT[5] 860). Cribbs informed Correctional Lieutenant Johnny Rivero of Petitioner's refusal. (6 RT 531–534, 7 RT 860). Thereafter, Rivero called Petitioner down to meet with him in the staff office to discuss the situation. (6 RT 531–34). Rivero testified that he wanted to counsel Petitioner first because if Petitioner was receptive to the counseling, there would be no need for a disciplinary write-up. (6 RT 532). Petitioner testified at trial that he did not refuse to stand on October 6, 2010, and indicated that his refusal to stand occurred sometime earlier. (7 RT 908–09, 936). Rivero testified that when he spoke to Petitioner regarding Petitioner's refusal to stand, it was Rivero's understanding that Petitioner refused to stand on October 6, 2010. (7 RT 938). The incident that gave rise to the battery conviction Petitioner is challenging in the instant petition occurred in the staff office at approximately 7:45 p.m. on October 6, 2010. (7 RT 815, 840, 860).

Petitioner argues his trial counsel was ineffective for failing to utilize RVR Log No. C-10-09-023, which Petitioner received approximately six hours prior to being taken to speak with Rivero, to impeach Rivero's testimony that he intended to resolve the dispute informally to prevent Petitioner from receiving an RVR. (ECF No. 1 at 5; ECF No. 17 at 4–5). RVR Log No. C-10-09-023 concerned Petitioner's refusal to stand for the mandatory standing count on September 30, 2010, and was written by Correctional Officer J. Davis on October 5, 2010. (ECF No. 15-2 at 2). Rivero began working at Facility C, where Petitioner was housed, on October 5, 2010. (6 RT 529, 556). There is nothing in the record that indicates Rivero was aware that Petitioner previously refused to stand for the mandatory standing count on September 30, 2010, or that Rivero knew of the RVR written by Davis. Thus, the issuance of RVR Log No. C-10-09-023 before Petitioner spoke with Rivero is not inconsistent with Rivero's testimony that he wished to counsel Petitioner before any disciplinary write-up occurred with respect to Petitioner's refusal to stand on October 6, 2010. Given that the issuance of RVR Log No. C-10-09-023 was not inconsistent with Rivero's testimony, the RVR would not have been an effective form of impeachment. Strickland directs courts to "indulge a strong presumption that counsel's

---

[5] "RT" refers to the Reporter's Transcript of Proceedings lodged by Respondent on December 17, 2015. (ECF No. 18).

1  conduct falls within the wide range of reasonable professional assistance," and Petitioner has
2  failed to overcome the presumption. 466 U.S. at 689.

3      Based on the foregoing, the Court finds that Petitioner is not entitled to habeas relief for
4  ineffective assistance of counsel on the ground that trial counsel failed to impeach Rivero's
5  testimony with RVR Log No. C-10-09-023. Accordingly, Petitioner's first claim for relief is
6  denied.

7      3.  Failure to Object to Prosecutor's Use of Petitioner's Silence

8          **a.  Procedural Default**

9      In his second claim for relief, Petitioner asserts that his trial counsel was ineffective for
10  failing to object to or request a correcting instruction regarding the prosecutor's use of
11  Petitioner's silence for impeachment purposes. (ECF No. 1 at 7). This claim was raised in
12  Petitioner's October 10, 2014 state habeas petition filed in the Kings County Superior Court,
13  which denied the claim in a reasoned opinion. (LDs 11, 12). This claim was also raised in
14  Petitioner's January 29, 2015 state habeas petition filed in the California Court of Appeal, which
15  summarily denied the claim. (LDs 15, 16). Finally, the claim was raised in Petitioner's March 2,
16  2015 state habeas petition filed in the California Supreme Court, which denied the petition with
17  citation to Clark, 5 Cal. 4th at 767, 769. (LDs 19, 20). Clark discusses several procedural bars
18  used by California courts, and the pages cited here by the California Supreme Court refer to the
19  bar on successive petitions. Respondent argues that this claim should be denied on the merits
20  because judicial economy counsels giving the merits question priority when the procedural bar
21  presents a complicated issue of law. (ECF No. 15 at 25). As discussed above, if the procedural
22  bar issue is more complex than the merits issue, courts may "proceed to the merits if the result
23  will be the same." Franklin, 290 F.3d at 1232. Accordingly, the Court will proceed to review the
24  claim *de novo*. See Allen, 629 F. App'x at 815.

25          **b.  Analysis**

26      During cross-examination at trial, Petitioner and the prosecutor engaged in the following
27  colloquy:

28

1   Q. You talked about that the next day that there was a use of force video; It's like an interview, right? Where an officer talks to you about this incident, right?

3   A. Yes.

4   Q. And, isn't it true that in that use of force video that you didn't say anything about the lieutenant grabbing you around the neck and throwing you against the wall?

6   A. I didn't say anything.

7   Q. And Lieutenant Rivero wasn't there during that use of force video, was he?

8   A. No he was not.

9   Q. So this was the first time, that was the day after the incident that was on October 7th, 2010?

11   A. Yeah.

12   Q. So today, in court, is the first time that you have finally came out and said, "That's right, the lieutenant grabbed me around the neck and threw me against the wall,"; Isn't that right?

14   A. Today I'm on trial.

15   Q. Okay. But at that point, Mr. Richson, you were being interviewed, it was being video taped so that means there was a permanent record of what you were going to say, at that point.

17   A. Yes.

18   Q. A record that could possibly come into the hands of your own defense attorney. And, you had a chance to say right then and there exactly what happened, exactly what you told us today in court, that Lieutenant Rivero grabbed you around the neck and threw you into the wall, assaulted you; And, you didn't say a thing?

21   A. First of all, I had no idea I would be on trial.

22   Q. Isn't it true you didn't say a thing?

23   A. This is the first time I said anything about the situation.

24   [PROSECUTOR]: Objection, nonresponsive. The question was, "You didn't say a thing at all?"

25   THE COURT: I'll sustain the objection.

26   Q. It's true you did not say anything about what you told us today, here in court?

28   A. No.

1        Q. Thank you.

2        [PROSECUTOR]: Nothing further.

3    (7 RT 920–21).

4        During closing argument, the prosecutor argued:

5        Another surrounding circumstance that relates directly to the
     defendant was what happened after the incident. The following day
6    there was a recorded interview of the defendant, video recorded
     interview of the defendant. And, I talked to him about that, when
7    he took the stand. And, he talked about it freely with you. So, we
     know that happened. But, we also know that during that recorded
8    interview he didn't say one thing about the lieutenant attacking
     him, about the lieutenant assaulting him, grabbing him by the neck,
9    throwing him against the wall. He didn't say one thing about that.
     Why not? It's being recorded, here's your chance. Why—Why are
10   you going to wait for over a year to finally come to court to finally
     give that story, when the very next day—if that's what happened
11   just the day before the very next day here's your chance.

12       . . .

13       That was his chance to speak is up and he didn't. He spoke up
     when he got in Court but that was after he knew there were charges
14   filed against him. And, that's something you can consider.

15   (8 RT 1172). Defense counsel's objections based on misstatement of evidence, misstatement of

16   law, and shifting the burden were overruled. (8 RT 1172–73).

17       In <u>Doyle v. Ohio</u>, the Supreme Court considered "whether a state prosecutor may seek to

18   impeach a defendant's exculpatory story, told for the first time at trial, by cross-examining the

19   defendant about his failure to have told the story after receiving <u>Miranda</u> warnings at the time of

20   his arrest." 426 U.S. 610, 611 (1976). The Supreme Court held that the use for impeachment

21   purposes of a defendant's silence at the time of arrest and *after* receiving <u>Miranda</u> warnings was

22   fundamentally unfair and violated the Due Process Clause of the Fourteenth Amendment. <u>Id.</u> at

23   618–19. Subsequently, the Supreme Court has

24       continued to reiterate [its] view that <u>Doyle</u> rests on "the
     fundamental unfairness of implicitly assuring a suspect that his
25   silence will not be used against him and then using his silence to
     impeach an explanation subsequently offered at trial." <u>Doyle</u> and
26   subsequent cases have thus made clear that breaching the implied
     assurance of the <u>Miranda</u> warnings is an affront to the fundamental
27   fairness that the Due Process Clause requires.

28   <u>Wainwright v. Greenfield</u>, 474 U.S. 284, 291 (1986) (footnotes omitted) (quoting <u>South Dakota</u>

v. Neville, 459 U.S. 553, 565 (1983)). Therefore, where "no governmental action induced petitioner to remain silent before arrest" and where the "failure to speak occurred before the petitioner was taken into custody and given Miranda warnings," the Supreme Court has held that "the fundamental unfairness present in Doyle is not present . . . [and] impeachment by use of prearrest silence does not violate the Fourteenth Amendment." Jenkins v. Anderson, 447 U.S. 231, 240 (1980).

Here, there is nothing in the record establishing that Petitioner received Miranda warnings at the time of the videotaped use of force interview. Thus, Petitioner's "silence [was] probative and [did] not rest on any implied assurance by law enforcement authorities that it will carry no penalty." Brecht, 507 U.S. at 628. The prosecutor's use of Petitioner's silence at the use of force interview did not violate Doyle, and "trial counsel cannot have been ineffective for failing to raise a meritless objection." Juan H. v. Allen, 408 F.3d 1262, 1273 (9th Cir. 2005).

Based on the foregoing, the Court finds that Petitioner is not entitled to habeas relief for ineffective assistance of counsel on the ground that trial counsel failed to object to or request a correcting instruction regarding the prosecutor's use of Petitioner's silence for impeachment purposes. Accordingly, Petitioner's second claim for relief is denied.

**B. Prosecutorial Misconduct**

In his third claim for relief, Petitioner alleges the following instances of prosecutorial misconduct: (1) delving into the details of Petitioner's prior convictions; (2) asking Petitioner if he was a level 4 inmate, the "highest classification"; (3) improperly using Petitioner's silence for impeachment purposes; and (4) improperly vouching for the credibility of prosecution witnesses.

1. Legal Standard

The Supreme Court "has recognized that prosecutorial misconduct may 'so infec[t] the trial with unfairness as to make the resulting conviction a denial of due process.'" Greer v. Miller, 483 U.S. 756, 765 (1987) (alteration in original) (quoting Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974)). "To constitute a due process violation, the prosecutorial misconduct must be 'of sufficient significance to result in the denial of the defendant's right to a fair trial.'" Greer, 483 U.S. at 765 (quoting United States v. Bagley, 473 U.S. 667, 676 (1985)). "[T]he touchstone

1    of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial,

2    not the culpability of the prosecutor." Smith v. Phillips, 455 U.S. 209, 219 (1982). "On habeas

3    review, constitutional errors of the 'trial type,' including prosecutorial misconduct, warrant relief

4    only if they 'had substantial and injurious effect or influence in determining the jury's verdict.'"

5    Wood v. Ryan, 693 F.3d 1104, 1113 (9th Cir. 2012) (quoting Brecht, 507 U.S. at 637–38).

6            2.   Petitioner's Prior Convictions

7                 **a. Procedural Default**

8            Petitioner asserts that the prosecutor engaged in misconduct by delving into the details of

9    Petitioner's prior convictions. (ECF No. 1 at 8). This claim was raised on direct appeal to the

10   California Court of Appeal, which denied the claim in a reasoned decision. Petitioner did not

11   raise this claim in his petition for review to the California Supreme Court. (LD 7). This claim

12   was raised in Petitioner's June 26, 2014 state habeas petition filed in the California Court of

13   Appeal, which denied the claim "because he has failed to show [it was] raised and rejected by the

14   superior court in a habeas proceeding." (LDs 13, 14). This claim was also raised in Petitioner's

15   March 2, 2015 state habeas petition filed in the California Supreme Court, which denied the

16   petition with citation to Clark, 5 Cal. 4th at 767, 769. (LDs 19, 20). Clark discusses several

17   procedural bars used by California courts, and the pages cited here by the California Supreme

18   Court refer to the bar on successive petitions. Respondent argues that this claim should be denied

19   on the merits because judicial economy counsels giving the merits question priority when the

20   procedural bar presents a complicated issue of law. (ECF No. 15 at 33). As discussed above, if

21   the procedural bar issue is more complex than the merits issue, courts may "proceed to the merits

22   if the result will be the same." Franklin, 290 F.3d at 1232. Accordingly, the Court will proceed to

23   address the claim on the merits. Accordingly, the Court will proceed to review the claim de novo.

24   See Allen, 629 F. App'x at 815.

25                 **b. Analysis**

26           Petitioner testified at trial. (7 RT 887–924). Petitioner testified on direct examination that

27   he was previously convicted for murder and second-degree robbery. (7 RT 905). During cross-

28   examination, the prosecutor asked if Petitioner used a gun in the commission of an armed

robbery. Defense counsel's objection that the question was beyond the scope of direct was overruled. Petitioner answered in the affirmative. The prosecutor then asked if Petitioner was convicted of "first degree murder where you used a gun to kill somebody?" Petitioner answered in the affirmative. The prosecutor noted that first-degree murder is premeditated, and Petitioner agreed. The prosecutor then asked Petitioner, "You had to choose and consider killing someone before actually doing it; isn't that right?" (7 RT 906). Petitioner answered in the affirmative. Defense counsel objected, and the trial judge asked counsel to approach. It appears an unreported sidebar conference may have been held. Thereafter, the prosecutor introduced into evidence Petitioner's section 969b packet,[6] and there were no further questions regarding Petitioner's prior convictions. (7 RT 907).

On direct appeal, the California Court of Appeal stated:

> It is well established that when a prior felony conviction is used to impeach a criminal defendant who chooses to testify at trial, the prosecution is limited to the fact of the conviction, the date, and the nature of the crime committed. Details and circumstances of the prior offense are not admissible. Our Supreme Court reiterated the rule that eliciting "the exact nature of the convictions, that is, facts that 'would appear on the face of the record of judgment,' [is] proper."

Richson, 2014 WL 129834, at *4 (citations omitted). Whether the prosecutor's questions were proper under California law is not an issue this Court will address. See Estelle v. McGuire, 502 U.S. 62, 67–68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."). The pertinent question on habeas review is whether the prosecutor's questions regarding Petitioner's prior convictions so infected the trial with unfairness as to deny due process. See Greer, 483 U.S. at 765. The Ninth Circuit has held:

> A habeas petitioner bears a heavy burden in showing a due process violation based on an evidentiary decision. "Evidence introduced by the prosecution will often raise more than one inference, some permissible, some not." In such cases, "we must rely on the jury to sort [the inferences] out in light of the court's instructions." Admission of evidence violates due process "[o]nly if there are *no* permissible inferences the jury may draw" from it.

---

[6] California "Penal Code section 969b provides that prison records or copies of such records, if certified by the custodian of records, are admissible as prima facie evidence that a person has been convicted of a crime and has served a term of imprisonment for that crime." People v. Towne, 44 Cal. 4th 63, 81 n.6 (Cal. 2008).

Boyde v. Brown, 404 F.3d 1159, 1172 (9th Cir.), as amended on reh'g, 421 F.3d 1154 (9th Cir. 2005) (alterations in original) (quoting Jammal v. Van de Kamp, 926 F.2d 918, 920 (9th Cir. 1991)).

In addition to determining whether Petitioner committed a battery upon a noninmate, the jury in the instant case was required to determine whether Petitioner had two prior convictions within the meaning of the three strikes law. The jury was provided with a copy of Petitioner's section 969b packet, which contained information that Petitioner was convicted of first-degree murder and second-degree robbery with firearm enhancements under California Penal Code section 12022(a)(1). (ECF No. 17 at 47, 49, 51, 53). The jury also was instructed in pertinent part:

> Consider the evidence presented on this allegation only when deciding whether the defendant was previously convicted of the crimes alleged or for the limited purpose of assessing credibility of the defendant. Do not consider this evidence as proof that the defendant committed any of the crimes with which he is currently charged or for any other purpose.

(CT 105).

The jury could draw permissible inferences from the prior conviction evidence. See, e.g., Spencer v. Texas, 385 U.S. 554, 560–61 (1967) (noting the well-established rule that evidence of a defendant's prior crimes traditionally has been admitted when the defendant testifies and the State seeks to impeach his credibility). Additionally, the trial court specifically instructed the jury that its consideration of the evidence was limited to those permissible inferences. See Weeks v. Angelone, 528 U.S. 225, 234 (2000) ("A jury is presumed to follow its instructions."). Moreover, the additional information elicited about Petitioner's prior convictions was generally cumulative of and corroborated by the section 969b packet.[7] See Mejorado v. Hedgpeth, 629 F. App'x 785, 787 (9th Cir. 2015) ("Neither the exclusion nor the admission of cumulative evidence is likely to cause substantial prejudice.").

---

[7] On direct appeal, the California Court of Appeal stated that the prosecutor's questions regarding the prior convictions technically went beyond the information set forth in the section 969b packet. For example, at the time of Petitioner's prior convictions, section 12022(a)(1) could be violated without the defendant being personally armed, and first-degree murder does not necessarily require a finding of premeditation and deliberation. Richson, 2014 WL 129834, at *4.

Based on the foregoing, and given that the Supreme Court has "defined the category of infractions that violated 'fundamental fairness' very narrowly," <u>Dowling v. United States</u>, 493 U.S. 342, 352 (1990), the Court finds that the prosecution's questions regarding Petitioner's prior convictions did not so infect the trial with unfairness as to deny due process. Accordingly, Petitioner is not entitled to habeas relief for prosecutorial misconduct based on this ground.

### 3. Petitioner's Inmate Classification

Petitioner asserts that the prosecutor engaged in misconduct by asking Petitioner if he was a level 4 inmate, which is the highest level of security classification. (ECF No. 1 at 8). Respondent argues that the state court's denial of this claim was not contrary to, or based upon an unreasonable application of, Supreme Court precedent. (ECF No. 15 at 35). Petitioner raised this claim on direct appeal in the California Court of Appeal, which denied the claim in a reasoned decision. The claim was also raised in the petition for review, which the California Supreme Court summarily denied. (LDs 7, 8). As federal courts review the last reasoned state court opinion, the Court will "look through" the summary denial and examine the decision of the California Court of Appeal. <u>See</u> <u>Brumfield</u>, 135 S. Ct. at 2276; <u>Ylst</u>, 501 U.S. at 806.

In denying Petitioner's claim challenging the admissibility of evidence regarding his inmate classification, the California Court of Appeal stated:

> Defendant claims the trial court erred in failing to exclude evidence that he was a level 4 inmate, claiming such evidence was irrelevant to any issue in the trial. During defendant's cross-examination, the following exchange took place:
>
> > "[Prosecutor]: Okay. Now you're classified as a level 4 inmate; Is that right?
> >
> > "[Defendant]: Yes, sir.
> >
> > "[Prosecutor]: And, that's actually the highest level of classification—
> >
> > "[Defense counsel]: Objection, relevance.
> >
> > "[Prosecutor]: —of inmates in state prison, isn't it?
> >
> > "The Court: You want to approach, please.
> >
> > "[Prosecutor]: [Y]ou're housed in—at the time of this incident you were housed in facility C, right?
> >
> > "[Defendant]: Yeah.

"[Prosecutor]: And, that's a housing unit for or a housing facility for level 4 inmates, correct?

"[Defendant]: Yes.

"[Prosecutor]: And, level 4 inmates is the highest classification of inmates; Isn't that right?
"[Defendant]: Yes.

"[Prosecutor]: It goes 1, 2, 3, 4 being the highest?

"[Defendant]: Yes.

"[Defense counsel]: Objection, your Honor. Same objection.

"The Court: Overruled. [¶] Next question.

"[Prosecutor]: And that classification is reserved for inmates who are considered the most serious in state prison, right?

"[Defendant]: Yes, you could say that."

Evidence Code section 351 provides "all relevant evidence is admissible" unless it is otherwise prohibited. Relevant evidence is defined as evidence "having any tendency in reason to prove or disprove any disputed fact that is of consequence to the determination of the action." (Evid.Code, § 210.) "Evidence is relevant if it tends ' "logically, naturally, and by reasonable inference" to establish material facts such as identity, intent, or motive.' " (*People v. Williams* (2008) 43 Cal.4th 584, 633–634.) A trial court enjoys broad discretion in determining the relevancy of evidence. (*People v. Cash* (2002) 28 Cal.4th 703, 727.) We review a trial court's rulings on relevance and the admissibility of evidence for abuse of discretion. (*People v. Aguilar* (2010) 181 Cal.App.4th 966, 973.)

Arguing there was never an issue as to his classification, defendant claims the above line of questioning was irrelevant. We disagree. While there was no issue directly related to defendant's classification score, the questions were relevant to rebut defendant's assertion, made repeatedly through questioning, that Rivero was acting to intimidate defendant and ultimately assaulted him without provocation. Defendant testified during direct examination that 8 to 10 officers had escorted him from his cell and he was taken to the office to "pressure me about this situation because I was having a problem with the building officer." Throughout the cross-examination of the correctional officers, the defense repeatedly insinuated Rivero was acting improperly by conducting the counseling in the office rather than at defendant's cell in view of the other inmates. Further, the defense made several references to the large size of the officers and the much smaller size of defendant. Defendant's contention that his counsel only referenced the size of the officers within the office to "establish the basic facts of who was there, and the dimensions of the office" is belied by his closing argument where he argued:

"We know this is a tiny office, okay. But the other officers are there. We have four officers in this tiny office, who just happen to be there for whatever reason.... We know there's a 6'6" guy in there, there's a 6'1" guy in there, Mr. Rivera, [*sic*] and there was another officer. So these are

intimidating figures. And, I think that's what Lieutenant Rivera [*sic*] had in mind before [defendant] actually came down."

Defense counsel's questions to the officers as well as defendant's direct testimony placed the issue of how he was transported to the office, as well as the number and size of officers involved in the case, in issue. Evidence defendant was a level 4 inmate, and establishing the classification was reserved for the "most serious" inmates, rebutted the inference that the number of officers present was solely to "intimidate" defendant. Of course, this was the thrust of the defense: that Rivero wanted to establish his authority, treated defendant inappropriately, sought to intimidate him, and when Rivero saw defendant failed to cow to his intimidation, resorted to force to establish his dominance. Thus, we cannot conclude the trial court abused its discretion in finding the evidence was relevant to a disputed fact in issue in the trial.

Besides being irrelevant, defendant argues the evidence was highly prejudicial as it led the jury to speculate as to why he had that classification, and the jury "may have concluded that this was for some heinous act in prison." First, we note no objection was made on that ground in the trial court. Rather, the only objection stated on the record was relevance, which was properly overruled.[8] Defense counsel never articulated on the record why this information should be viewed as inflammatory, nor did he ever suggest a limiting instruction regarding the use of the testimony. As that particular issue was never raised in the trial court, we decline to reach the merits of this contention on appeal. (Evid.Code, § 353; *People v. Partida* (2005) 37 Cal.4th 428, 433–434.)

Furthermore, the line of questioning does not appear to be prejudicial under the facts of this case. The prosecutor asked if the classification was "reserved for inmates who are considered the most serious in state prison." The jury was already apprised of the fact defendant had been committed to prison for first degree murder and robbery. The logical inference would be that an inmate who had committed such offenses certainly would be "considered the most serious in state prison." No testimony was taken regarding how an inmate received such a classification, nor was there argument or insinuation this classification resulted from any conduct within the prison. Thus, any prejudice from the questions appears to be minimal.

Richson, 2014 WL 129834, at *6–7 (footnote in original).

"The admission of evidence does not provide a basis for habeas relief unless it rendered the trial fundamentally unfair in violation of due process." Holley v. Yarborough, 568 F.3d 1091, 1101 (9th Cir. 2009) (internal quotation marks omitted) (quoting Johnson v. Sublett, 63 F.3d 926, 930 (9th Cir. 1995)). The petitioner in Holley was charged with multiple felony counts of lewd and lascivious acts on a child under fourteen and challenged the trial court's admission of a lewd matchbook and several sexually explicit magazines seized from the petitioner's bedroom.

---

[8] It appears some sort of off-the-record discussion was had regarding the objection; however, the contents of that discussion were never placed on the record.

568 F.3d at 1096. The Ninth Circuit denied habeas relief because the Supreme Court "has not yet made a clear ruling that admission of irrelevant or overtly prejudicial evidence constitutes a due process violation sufficient to warrant issuance of the writ [of habeas corpus]." Id. at 1101. "Absent such 'clearly established Federal law,'" the Holley court could not "conclude that the state court's ruling was an 'unreasonable application.'" Id. (quoting Carey v. Musladin, 549 U.S. 70, 77 (2006)). There is no Supreme Court holding that establishes the fundamental unfairness of admitting irrelevant or prejudicial evidence. Thus, the California Court of Appeal's determination was not contrary to, or an unreasonable application of, clearly established federal law, nor was it based on an unreasonable determination of fact. The state court's decision was not "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Richter, 562 U.S. at 103. Accordingly, Petitioner is not entitled to habeas relief for prosecutorial misconduct based on the prosecutor asking Petitioner about his inmate classification.

### 4. Petitioner's Silence

Petitioner asserts that the prosecutor engaged in misconduct by improperly using Petitioner's silence for impeachment purposes. (ECF No. 1 at 8). Respondent argues that this claim is groundless and also was waived because there was no timely and specific defense objection at trial. (ECF No. 15 at 36). This claim was raised in multiple state habeas petitions in the Kings County Superior Court and the California Court of Appeal. (LDs 11, 13, 15). This claim was last raised in Petitioner's March 2, 2015 state habeas petition filed in the California Supreme Court, which denied the petition with citation to Clark, 5 Cal.4th at 767, 769. (LDs 19, 20). Clark discusses several procedural bars used by California courts, and the pages cited here by the California Supreme Court refer to the bar on successive petitions. "Where, as here, the state Supreme Court has denied post-conviction relief due to procedural default, we review a defendant's habeas claims de novo." Allen, 629 F. App'x at 815.

As discussed in section IV(A)(3), supra, there was no Doyle violation because nothing in the record establishes that Petitioner received Miranda warnings at the time of the videotaped use of force interview. Where "no governmental action induced petitioner to remain silent," it was

not a violation of due process to use Petitioner's silence to impeach his credibility. <u>Jenkins</u>, 447 U.S. at 240–41. Accordingly, Petitioner is not entitled to habeas relief for prosecutorial misconduct based on this ground.

5. <u>Vouching for Prosecution Witnesses</u>

**a. Standard of Review**

Petitioner asserts that the prosecutor engaged in misconduct by vouching for the credibility of the prosecution's witnesses. (ECF No. 1 at 8). Respondent argues that this claim is unexhausted and meritless. (ECF No. 15 at 36). However, this claim was raised in Petitioner's March 2, 2015 state habeas petition filed in the California Supreme Court, and therefore is exhausted. (LD 19).

The California Supreme Court denied the March 2, 2015 petition with citation to <u>Clark</u>, 5 Cal. 4th at 767, 769. (LD 20). <u>Clark</u> discusses several procedural bars used by California courts, and the pages cited here by the California Supreme Court refer to the bar on successive petitions. Procedural default is an affirmative defense that the state must assert; otherwise the defense is waived. <u>Vang v. Nevada</u>, 329 F.3d 1069, 1073 (9th Cir. 2003). As Respondent has failed to raise procedural default as an affirmative defense to Petitioner's prosecutorial misconduct claim based on improper vouching, (ECF No. 15 at 36), the Court will review this claim <i>de novo</i>. <u>See</u> <u>Chaker v. Crogan</u>, 428 F.3d 1215, 1221 (9th Cir. 2005) (reviewing claim <i>de novo</i> when state forfeited procedural default defense and there was no state court decision on the merits).

**b. Legal Standard**

"Improper vouching consists of placing the prestige of the government behind a witness through personal assurances of the witness's veracity, or suggesting that information not presented to the jury supports the witness's testimony." <u>United States v. Ruiz</u>, 710 F.3d 1077, 1085 (9th Cir. 2013) (internal quotation marks omitted) (quoting <u>United States v. Younger</u>, 398 F.3d 1179, 1190 (9th Cir. 2005)). A prosecutor's improper comments violate the Constitution if they "so infected the trial with unfairness as to make the resulting conviction a denial of due process." <u>Darden v. Wainwright</u>, 477 U.S. 168, 181 (1986) (quoting <u>Donnelly v. DeChristoforo</u>, 416 U.S. 637, 643 (1974)). As "the appropriate standard of review for such a claim on writ of

1   habeas corpus is 'the narrow one of due process, and not the broad exercise of supervisory

2   power,'" it "is not enough that the prosecutors' remarks were undesirable or even universally

3   condemned." <u>Darden</u>, 477 U.S. at 181 (citations omitted). Additionally, "[p]rosecutorial

4   vouching does not violate due process where the 'remarks were invited [by defense counsel's

5   attack on the credibility of government witnesses], and did no more than respond substantially in

6   order to right the scale.'" <u>Barnes v. Almager</u>, 526 F. App'x 775, 778 (9th Cir. 2013) (second

7   alteration in original) (internal quotation marks omitted) (quoting <u>United States v. Young</u>, 470

8   U.S. 1, 12–13) (1985)). The Supreme Court has instructed that "remarks must be examined

9   within the context of the trial to determine whether the prosecutor's behavior amounted to

10   prejudicial error." <u>Young</u>, 470 U.S. at 12.

11         **c. Analysis**

12       Petitioner specifically challenges the following statements made by the prosecutor during

13   closing argument: (1) "officers who testified were credible"; (2) "Who are we going to believe?

14   The defendant's version or the officer's?"; and (3) if Rivero would have assaulted Petitioner, "he

15   wouldn't do it like that." (ECF No. 17 at 12) (citing 8 RT 1121, 1151, 1155–56).

16       The first challenged statement occurred during the prosecution's closing argument. The

17   prosecutor stated in pertinent part:

18           And, you heard that through the testimony of those officers, those
            four officers that took the stand. All of them confirmed the same
19           thing, that the defendant attacked the lieutenant and that he had to
            be physically restrained just to get him to stop. And, the officers
20           who testified were credible.

21           The judge just finished reading the instructions to you. You'll have
            them in the back. I'm not going to go back over all of them. But
22           there's some I'm just going to highlight.

23           There's the one instruction on page 6, it's instruction 226. And,
            that's where it starts kind of a long instruction, it goes all the way
24           over to page 7, almost all the way down on page 7. But I want to
            highlight some important parts of this instruction. On page 6, it
25           starts off by saying, "You alone must judge the believability or the
            credibility of the witnesses." That's talking about all the people
26           who took the stand. . . .

27   (8 RT 1121–22). Although the statement that "the officers who testified were credible" may have

28   been improper, the prosecutor immediately went on to emphasize the importance of the jury

instructions and explicitly directed the jury's attention to the instruction that the jury "alone must judge the believability or the credibility of the witnesses." (8 RT 1122). The Court presumes that the jury followed the court's instructions, Weeks, 528 U.S. 234, and "arguments of counsel generally carry less weight with a jury than do instructions from the court," Boyde v. California, 494 U.S. 370, 384 (1990). Viewing the statement in context, the Court finds that the statement did not "so infect[] the trial with unfairness as to make the resulting conviction a denial of due process." Darden, 477 U.S. at 181.

The second challenged statement occurred during the prosecution's rebuttal closing. The prosecutor stated in pertinent part:

> I submit to you what the defense wants you to believe, in this case, it's not reasonable. It's not believable. And, you have to ask yourself, "Who are we going to believe? The defendant's version or the officers' version?" The four officers that took the stand. And, you have to ask yourself which version is consistent with the surrounding facts and circumstances and which version is inconsistent with all the surrounding facts and circumstances. You know the details of that particular interaction between the lieutenant and the defendant but what we heard about other circumstances, surrounding circumstances, things that happened before that, things that happened after that, consider all those surrounding circumstances in deciding which version you're going to believe.

(8 RT 1151–52). The prosecutor asking "Who are we going to believe? The defendant's version or the officers' version?" does not constitute improper vouching. Viewed in context, the questions do not place the prestige of the government behind the officers through personal assurance of their veracity or suggesting that information not presented to the jury supports their testimony. Rather, the prosecutor specifically directs the jury to "ask yourself which version is consistent with the surrounding facts and circumstances and which version is inconsistent with all the surrounding facts and circumstances." (8 RT 1151–52). Moreover, the prosecutor prefaced the challenged statement with "I submit," which usually "convey[s] to the jury that the statements were intended only as a submission for its consideration" rather than personal assurances of witnesses' veracity. United States v. Weatherspoon, 410 F.3d 1142, 1147 n.3 (9th Cir. 2005) ("In drawing the line between acceptable statements grounded on inferences from the evidence and unacceptable statements representing an improper suggestion of personal opinion,

we have been especially sensitive to the form of prosecutorial statements—so that use of the prefatory phrase 'I submit' has been preferred to the use of 'I think,' in part because the latter is more likely to lead the jury to give undue credit to the statement that follows . . . ."). Accordingly, the Court finds that the statement did not "so infect[] the trial with unfairness as to make the resulting conviction a denial of due process." Darden, 477 U.S. at 181.

The third challenged statement also occurred during the prosecution's rebuttal closing. The prosecutor stated in pertinent part:

> And, if he was going to assault the defendant, like they want you to believe, he wouldn't do it like that. Because, think about it, he wouldn't put himself in harm's way. If he was going to—If this was all by design, if this was all just his decision to, "Yeah, I'm just going to set this example for all my other officers, show them that I'm the tough guy. Show them that I'm the new sheriff here. I'm going to make an example out of this inmate. I'm going to rough him up." If that was all by design, if that was what he was trying to do you saw the pictures, you heard the testimony; He got punched in the mouth, in the eye, he was punched in other places. He wouldn't have had to put himself in harm's way, if it was all by design. And, why would he put the other officers there in harm's way? We know Officer Cribbs testified he jammed his thumb. He also tore a muscle in his shoulders; He's still feeling the effects of even today. Why would the lieutenant, if he wants to set a good example, put himself in harm's way where he could get injured and put the other officers in harm's way and where he could get injured? Doesn't make sense. That's what they want you to believe.

(8 RT 1155–56).

This statement responded to defense counsel's argument that Lieutenant Rivero wanted to make an example out of Petitioner and show the prisoners that they must comply with orders. (8 RT 1136). The Ninth Circuit has held that "[c]ounsel are given latitude in the presentation of their closing arguments, and courts must allow the prosecution to strike hard blows based on the evidence presented and all reasonable inferences therefrom." Ceja v. Stewart, 97 F.3d 1246, 1253 (9th Cir. 1996) (quoting United States v. Baker, 10 F.3d 1374, 1415 (9th Cir. 1993)). Viewed in context, the prosecutor did not personally assure Rivero's veracity or suggest that information not presented to the jury supports Rivero's testimony. Rather, the prosecutor attacked the defense's theory of the case, relying on the evidence presented in the case. See United States v. Sayetsitty, 107 F.3d 1405, 1409 (9th Cir. 1997) ("Criticism of defense theories

and tactics is a proper subject of closing argument."). Accordingly, the Court finds that the statement did not "so infect[] the trial with unfairness as to make the resulting conviction a denial of due process." <u>Darden</u>, 477 U.S. at 181.

In support of this claim, Petitioner also cites to pages 1163 to 1165 of the record, which correspond to the prosecutor's rebuttal closing. (ECF No. 1 at 8). The prosecutor stated to the jury that they could "rely on evidence that was not presented," noting that no evidence was presented supporting the defense's allegations that Rivero wanted to assault Petitioner and had a particular motive to do so. (8 RT 1163). The prosecutor proceeded to argue:

> [N]othing has been presented against [Rivero] to show you that he's anything but what he comes across to be. It should lead you to believe that his employment record is spotless because you have to believe that if there was something in his past the defense would have dug it up, they would have found that.
>
> . . .
>
> Now, the defense can make allegations but they didn't support any of those allegations against the lieutenant. He has an employment record that follows him around. He's been working for twenty years. He has his employment file with C.D.C., where he's been working.

(8 RT 1164). In response to defense counsel's objection that the prosecutor was testifying, the trial court stated, "I'll sustain as to evidence regarding employment records." (8 RT 1164). The prosecutor continued his argument and stated:

> All right, he does have an employment record and that is something that does follow him around. And, when we go to some of the allegations, some of the other statements that were made by the defense directly against this lieutenant, they said that he was trying to show these other officers that he was a tough guy by assaulting the defendant. This lieutenant has been working for twenty years. He's earned his stripes. He's not a rookie. He's not trying to make a name for himself or try to show everybody who he is. He's already proven what kind of officer he is. He's risen through the ranks; He doesn't have to prove anything to anyone that he can do his job and he can do it well.

(8 RT 1165).

These statements were made during the prosecution's rebuttal closing, in response to defense counsel's argument that Lieutenant Rivero was new to the facility, needed to show leadership and set the tone, and "want[ed] to show how tough he is." (8 RT 1135). <u>See</u> <u>Young</u>,

470 U.S. at 12–13 ("[I]f the prosecutor's remarks were 'invited,' and did no more than respond substantially in order to 'right the scale,' such comments would not warrant reversing a conviction."); United States v. Romos-Gonzales, 542 F. App'x 582, 583 (9th Cir. 2013) ("Romos-Gonzales's entire case, from start to finish, hinged on impugning the integrity of the government's investigation and witnesses; the prosecutor was permitted to note during his closing argument that Romos-Gonzales's theory was not supported by any evidence.") (citations omitted). Additionally, the trial court sustained defense counsel's objection with respect to the prosecutor's comments on Rivero's employment record. Any misconduct was mitigated by the court sustaining the objection and by the court's jury instruction, given at the beginning of trial and before closing arguments, that "[n]othing that the attorneys say is evidence. In their opening statements and closing arguments, the attorneys will discuss the case, but their remarks are not evidence." (6 RT 517; 8 RT 1108). Furthermore, in light of the consistent testimony of the other three officers, any improper vouching in support of Rivero did not have a "substantial and injurious effect or influence in determining the jury's verdict." Brecht, 507 U.S. at 637.

Based on the foregoing, the Court finds that Petitioner is not entitled to habeas relief for prosecutorial misconduct based on improper vouching. Therefore, Petitioner's third claim for relief is denied.

## C. Certificate of Appealability

Having found that Petitioner is not entitled to habeas relief, the Court now turns to the question of whether a certificate of appealability should issue. See Rule 11, Rules Governing Section 2254 Cases. A state prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition, and an appeal is only allowed in certain circumstances. Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003). The controlling statute in determining whether to issue a certificate of appealability is 28 U.S.C. § 2253, which provides:

> (a) In a habeas corpus proceeding or a proceeding under section 2255 before a district judge, the final order shall be subject to review, on appeal, by the court of appeals for the circuit in which the proceeding is held.
>
> (b) There shall be no right of appeal from a final order in a proceeding to test the validity of a warrant to remove to another

district or place for commitment or trial a person charged with a criminal offense against the United States, or to test the validity of such person's detention pending removal proceedings.

(c) (1) Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from–

(A) the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court; or

(B) the final order in a proceeding under section 2255.

(2) A certificate of appealability may issue under paragraph (1) only if the applicant has made a substantial showing of the denial of a constitutional right.

(3) The certificate of appealability under paragraph (1) shall indicate which specific issue or issues satisfy the showing required by paragraph (2).

28 U.S.C. § 2253.

If a court denies a habeas petition on the merits, the court may only issue a certificate of appealability "if jurists of reason could disagree with the district court's resolution of [the petitioner's] constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Miller-El, 537 U.S. at 327; Slack v. McDaniel, 529 U.S. 473, 484 (2000). While the petitioner is not required to prove the merits of his case, he must demonstrate "something more than the absence of frivolity or the existence of mere good faith on his . . . part." Miller-El, 537 U.S. at 338.

In the present case, the Court finds that reasonable jurists could conclude that some of the issues presented are deserving of encouragement to proceed further. Therefore, the Court will grant a certificate of appealability on the following issues: (1) whether the prosecutor engaged in misconduct by eliciting additional information regarding Petitioner's prior convictions; and (2) whether the prosecutor engaged in misconduct by vouching for the credibility of the prosecution's witnesses.

///

///

///

27

**V.**

**ORDER**

Accordingly, the Court HEREBY ORDERS that:

1.  The petition for writ of habeas corpus is DENIED;

2.  The Clerk of Court is DIRECTED to CLOSE the case; and

3.  The Court GRANTS a certificate of appealability on whether the prosecutor engaged in misconduct by eliciting additional information regarding Petitioner's prior convictions and vouching for the credibility of the prosecution's witnesses.

IT IS SO ORDERED.

Dated: __**May 25, 2017**__

_/s/_ Erica P. Grosjean

UNITED STATES MAGISTRATE JUDGE